# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBIN M. OLIVER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1733 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon[1] |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 12) will be granted, Defendant's Motion for Summary Judgment (Doc. 15) will be denied, and this case will be remanded for further administrative proceedings.

## BACKGROUND

Plaintiff Robin M. Oliver ("Claimant") has filed this social security appeal, challenging Administrative Law Judge John J. Porter's ("the ALJ's") decision dated June 20, 2007. *See generally* Compl. (Doc. 1). Claimant seeks Disability Insurance Benefits and, to be eligible, she must prove disability on or before December 31, 2009. *See* ALJ's Decision, R. at 13.

The ALJ found that Claimant suffered the "severe" impairments of multiple sclerosis ("MS"), obesity, restless leg syndrome, gastroesophageal reflux disease, and irritable bowel syndrome. *Id.* at 15. The vocational expert testified that, if restricted to less than the full range of sedentary work in accordance with the ALJ's residual functional capacity ("RFC") findings,

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 10 & 11).

Claimant could perform jobs that existed in significant numbers in the national economy. *See id.* at 17, 21-22. The ALJ therefore found the Claimant not disabled at step five of the sequential regulatory analysis. *Id.* at 21-22.[2]

**ANALYSIS**

In many regards, the ALJ's decision enjoys the support of substantial evidence. These include his conclusions that:

(a) Claimant's depression was controlled by medicine and therefore "non-severe"; c*ompare* ALJ's Decision, R. at 16 *with* treatment notes of general practitioner Dr. Cynthia Ayers, R. at 301 ("Lexapro [is] work[ing]");

(b) Claimant's gastrointestinal problems were largely controlled and sufficiently addressed in the ALJ's RFC accommodations; *see* ALJ's Decision, R. at 19-20 (finding symptoms "may be a nuisance," and adopting RFC allowing for regular bathroom breaks); *compare, e.g.*, Claimant's testimony at hearing, R. at 34 (testifying she suffered routine bowel incontinence) *with* treatment notes of Drs. Lebovitz and Farah, R. at 240 ("[f]rom an intestinal standpoint, things are going great"), *id.* at 279 (noting Claimant had not attended treatment for over one year and denied incontinence), *and id.* at 282 (stating Claimant's primary issue was "chronic constipation");

(c) The RFC report of treating general practitioner Dr. Ayers was not fully supported by or consistent with objective clinical findings, and it therefore was not entitled to controlling weight; *see* ALJ's Decision, R. at 20; *compare also* Dr. Ayers' report, R. at 289-93 (providing little explanation why objective medical findings supported her highly restrictive RFC determinations) *with* <u>Snedeker v. Commissioner of Soc. Sec.</u>, 2007 WL 1954102, *2 (3d Cir. Jul. 6, 2007) (treating physician's opinions may be afforded less weight where they are "not supported by objective clinical or

---

[2] Under the five-step analysis, the ALJ considers whether an applicant: "(1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is 'severe'; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy." <u>Benedetto v. Commissioner of Social Sec.</u>, 2007 WL 4395648, *1 n.1 (3d Cir. Dec. 14, 2007) (citation to published Third Circuit authority omitted).

2

> laboratory findings" or are "inconsistent with other evidence in the record") (citation and internal quotations omitted); and

(d) As the record currently stands, Claimant's subjective complaints regarding the intensity, persistence and limiting effects of her symptoms may not be fully credible; *see* ALJ's Decision, R. at 19 (noting apparent inconsistencies between Claimant's testimony and findings of long-time treating neurologist Dr. Benjamin Smolar); *id.* at 20 (highlighting that, despite Claimant's assertion of substantial restrictions in daily activities, as late at February 2007 she admitted to assisting with her husband's catering business).

This being said, there is a lack of sufficient evidence to support the ALJ's RFC determinations.

In formulating Claimant's RFC, the ALJ placed substantial reliance on the records of treating neurologist Dr. Smolar. *See* ALJ's Decision, R. at 19, 20 (citing extensively to said physician's assessments and "plac[ing] great weight" on them in formulating Claimant's RFC). The Court's independent review of Dr. Smolar's records would, on first blush, appear to support the ALJ's conclusions regarding perceived discrepancies between the physician's findings and Claimant's allegations of disabling symptomatology. *See, e.g.*, various reports of Dr. Smolar between 2003 and 2007, R. at 163, 164, 217, 220, 331 & 350 (Claimant was "doing well," "holding her own," "stable," or "overall stable" neurologically). But one of his reports -- indeed the only one even tangentially addressing Claimant's putative RFC -- suggests otherwise. Specifically, Dr. Smolar indicated on March 18, 2004 that, despite "doing fairly well," "holding her own," and being "stable neurologically at [the] time," Claimant "clearly [was] not able to go back to work on a full-time basis." *Id.*, R. at 222.

By no means does this isolated comment demonstrate Claimant was disabled, nor can it form the basis for a reasoned RFC evaluation. What it does do, however, is call into question the

degree to which Dr. Smolar's findings have been viewed through the prisms of context and relativity.³

Dr. Smolar's statement aside, the only medical findings regarding RFC are the underdeveloped opinions of treating general practitioner Dr. Ayers and those of non-examining physicians who reviewed Claimant's file at the behest of the Social Security Administration ("the SSA"). *See* discussion *supra* regarding Dr. Ayers; *see also* RFC evaluations of non-examining physicians, R. at 197-205 *and* at 269-76. In the Court's view, there simply is not enough competent evidence to address the medical question of what Claimant's RFC has been or is. *See generally* Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (because "a claimant's [RFC] is a medical question," ALJ must "consider at least some supporting evidence from a [medical] professional" in rendering his decision) (citations and internal quotations omitted); Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995) ("[a]bsent some medical evidence of [the claimant's] RFC at the time of the hearing, the Secretary could not meet [his] burden [of] . . . demonstrat[ing] that [the claimant] was capable of performing the full range of light work"); *see also generally* Fromal v. Shalala, 1993 WL 516398, *4 (E.D. Pa. Dec. 10, 1993) (where SSA staff physician "neither examine[s the] plaintiff nor file[s] detailed written reports," but instead "merely review[s the] medical file and check[s] off boxes" on RFC form, her opinion does not constitute substantial evidence) (citations omitted, emphasis added); Green v. Schweiker, 749 F.2d 1066, 1071 n.3 (3d Cir. 1984) ("[s]tanding alone, . . . [a] capacities evaluation form,"

---

³ *See generally* Mayo Clinic's website, at http://www.mayoclinic.com/health/multiple-sclerosis/DS00188 (MS "is a chronic, potentially debilitating," and "unpredictable" disease that "[ranges] in severity" between "mild illness" and "permanent disability").

in which "government physicians . . . [merely] check[] off . . . boxes," is "not substantial evidence").[4]

Accordingly, this case will be remanded for the development of medical evidence regarding how Claimant's MS affects her residual capacity to work. If a consultative examination is necessary or appropriate, one should be ordered by the ALJ. *See* Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992) ("[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision") (citations and internal quotations omitted). Claimant also shall be permitted to supplement the medical record, and it would seem fitting for her to invite Dr. Smolar's detailed, objectively supported opinions regarding RFC. *See generally* Woodrow v. Secretary of Health & Human Servs., 1990 WL 66500, *3 (N.D.N.Y. May 10, 1990) ("if [a] treating source provides an incomplete report," "the necessary additional evidence and interpretation or explanation from the treating source" should be obtained).

Once the additional medical evidence has been gathered, and with or without rehearing as the ALJ deems appropriate, Claimant's disability determination should be revisited beginning at step five of the sequential analysis.[5]

---

[4] To be sure, the non-examining SSA physicians did provide some written explanations for the RFC determinations reflected in their check-box forms. *See* R. at 205, 274. Given the ALJ's substantial reliance on Dr. Smolar's findings, however, and the unanswered questions regarding how those findings correlate to Claimant's RFC, development of the administrative record remains appropriate.

[5] Although the ALJ's credibility determinations appear supportable under the current record, he may be required to revisit this issue depending on what further developments reveal. *See generally* Schwartz v. Halter, 134 F. Supp.2d 640, 653-54 (E.D. Pa. 2001) (ALJ must consider extent to which "subjective symptoms can reasonably be accepted as consistent with the objective medical evidence," and where "a claimant's subjective testimony . . . is supported by competent medical evidence," ALJ is required "to give [it] great weight") (citations omitted).

5

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (**Doc. 12**) is **GRANTED**, Defendant's Motion for Summary Judgment (**Doc. 15**) is **DENIED**, and this case is **REMANDED FORTHWITH** for further administrative proceedings consistent with this Order.

October 17, 2008
                                                          s/Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States Magistrate Judge

cc (via email):

Susan Paczak, Esq.
Jessica Smolar, Esq.